Jamie Serb (SBN 289601)
    E-Mail: jamie@crosnerlegal.com
Brandon K. Brouillette (SBN 273156)
    E-Mail: bbrouillette@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
    E-Mail: zach@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, CA 90210
Telephone: (866) 276-7637
Facsimile: (310) 510-6429

Attorneys for Plaintiff
RODOLFO GUTIERREZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO GUTIERREZ, as an individual on behalf of himself and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY, a New York corporation,<br><br>Defendants. | Case No.: 2:22-cv-08460-JFW-RAO<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed concurrently with Declarations of Brandon K. Brouillette and Jodey Lawrence; [Proposed] Order]**<br><br>Date:  January 22, 2024<br>Time: 1:30 p.m.<br>Place: Ctrm 7A<br><br>Hon. John F. Walter |

# TABLE OF CONTENTS

I.      INTRODUCTION.............................**Error! Bookmark not defined.**

II.     STATEMENT OF FACTS.................................................................2

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE

        SETTLEMENT  ..........................................................................5

   A. Proposed Settlement Terms ...................................................5

        1. Calculation of Settlement Awards .....................................6

        2. Nature And Method Of Notice..........................................6

        3. Objection & Opt-Out Procedures  ....................................7

        4. The Settlement Administrator ..........................................7

        5. Attorneys' Fees And Litigation Expenses.......................7

        6. Incentive Award For Class Representative  ....................8

        7. Releases  ..........................................................................8

   B. The Settlement Meets the Requirements for Preliminary Approval as

        to the Class Claims  .............................................................8

        1. Strength of Plaintiff's Case ...........................................11

        2. The Risk, Expense, Complexity and Likely Duration of Further

        Litigation ...........................................................................17

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

3. The Risk of Maintaining Class Action Status Throughout the Trial ..........................................................................................18

4. The Amount Offered in Settlement .................................................18

5. The Extent of Discovery Completed and the Stage of the............21

6. The Experience and Views of Counsel...........................................21

7. The Reaction of the Class to the Settlement ................................22

8. No Collusion Between the Parties or their Counsel ....................22

IV.     THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS AWARD ...................................................22

V.      PAGA NOTICE TO THE LWDA ...................................................24

VI.     CONCLUSION ................................................................................24

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5    <u>Acosta v. Trans Union, LLC,</u>
     243 F.R.D. 377 (C.D. Cal. 2007) ........................................................ 11

6

7    <u>Alvarado v. Dart Container Corp.,</u>
     4 Cal.5th 542 (2018) ......................................................................... 13

8

9    <u>Carrington v. Starbucks Corp.,</u>
     30 Cal.App.5th 504 (2018) ................................................................ 15

10

11   <u>Class Plaintiffs v. Seattle,</u>
     955 F.2d. 1268 (9th Cir. 1992) .......................................................... 11

12

13   <u>Cotter v. Lyft, Inc.,</u>
     193 F.Supp.3d 1030 (N.D. Cal. 2016) ............................................... 15

14

15   <u>Elisa Arroyo v. International Paper Company,</u>
     Case No. 5:17cv6211 (C.D. Cal.) ............................................... 2, 16, 17

16

17   <u>Fleming v. Covidien,</u>
     2011 U.S. Dist. ................................................................................. 15

18   <u>Franklin v. Kaypro Corp.,</u>
     884 F.2d 1222 (9th Cir. 1989) ............................................................. 8

19

20   <u>Gautreaux v. Pierce,</u>
     690 F.2d 616 (7th Cir. 1982) ........................................................ 1, 10

21

22   <u>Hanlon v. Chrysler Corp.,</u>
     150 F.3d 1011 (9th Cir. 1998) ........................................................... 10

23

24   <u>Jennings v. Open Door Mktg. Inc.</u>
     (N.D. Cal. Oct. 3, 2018) 2018 U.S. Dist. LEXIS 171356 ................... 16

25   <u>Linney v. Cellular Alaska Partnership,</u>
     151 F.3d 1234 (9th Cir. 1998) .................................................... 9, 10, 19

26

27   <u>Litty v. Merrill Lynch & Co.,</u>
     2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) .................................... 11

28

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS
AND AUTHORITIES

Lubin v. Wackenhut Corp.,
    5 Cal. App. 5th 926 (2016) reh'g denied (Dec. 14, 2016) ............................... 13

In re Mego Fin. Corp. Sec. Litig.,
    213 F.3d 454 (9th Cir. 2000) ................................................................... 19

Officers for Justice v. Civil Service Comm'n,
    688 F.2d 615 (9th Cir. 1982) ..................................................................... 9

Satchell v. Fed Ex. Corp.,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................ 22

Slavkov v. First Water Heater Partners I
    (N.D. Cal. July 25, 2017) 2017 U.S. Dist. LEXIS 116303 .............................. 16

Stewart v. Abraham,
    275 F.3d 220 (3d Cir. 2001) ..................................................................... 22

In re: Traffic Executive Ass'n-Eastern Railroads,
    627 F.2d 631 (2d Cir. 1980) ..................................................................... 10

Van Kempen v. Matheson Tri-Gas, Inc.
    (N.D. Cal. Aug. 25, 2017) 2017 U.S. Dist. LEXIS 137182 ............................. 15

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
    396 F.3d 96 (2d Cir. 2005) ....................................................................... 10

Wershba v. Apple Computers, Inc.
    91 Cal.App.4th 224 (2001) ........................................................................ 19

White v. Experian Information Solutions, Inc.,
    803 F.Supp.2d 1086 (C.D. Cal. 2011) ................................................... 19, 20

White v. Starbucks Corp.,
    497 F.Supp.2d 1080 (N.D. Cal. 2007) . [Brouillette Decl..] ............................ 12

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

**Statutes**

California Labor § 2698 ................................................................................. 3

Labor Code § 203 ...................................................................................... 15

Labor Code § 226 ...................................................................................... 15

Labor Code § 510 ...................................................................................... 12

Labor Code § 2699(h) ................................................................................. 15

Labor Code § 2699(*l*)(2) .............................................................................. 9

Labor Management Relations Act section 301 ......................................... 3

**Other Authorities**

Conte & Newberg, <u>Newberg on Class Actions</u> (4th ed. 2002), § 11.25 ............................................................................................... 10

Fed.R.Civ.P. 23(a) and (b)(3) ..................................................................... 22

Fed.R.Civ.P. 23(b)(3) ................................................................................. 22

Fed.R.Civ.P. 23(e) ................................................................................... 8, 9

Fed.R.Civ.P. 23(e)(2) .................................................................................. 9

Federal Judicial Center, <u>Managing Class Action Litigation: A Pocket Guide for Judges</u> (3d ed. 2010), available at http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf ....................... 20

<u>Findings of the Study of California Class Action Litigation</u>, available at http://www.courts.ca.gov/documents/class-action-lit-study.pdf ................. 17

hearing for June 24, 2024, or the Court's first ....................................... 2

hearing for June 24, 2024, or on the Court's first ................................... 24

<u>Manual for Complex Litigation, Fourth</u>, § 21.632 (2004) ................................. 1, 9

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 22, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7A of the above-captioned Court, located at 350 West First St., Los Angeles, California, the Hon. John F. Walter presiding, plaintiff Rodolfo Gutierrez will move the Court for preliminary approval of a proposed class action settlement under Fed.R.Civ.P. 23(e). The terms of the settlement are contained within the Stipulation of Settlement and Release ("Settlement Agreement"), filed concurrently herewith as Exhibit 1 to the Declaration of Brandon K. Brouillette. In addition, Plaintiff requests that the Court provisionally certify the class described in Section I.F. of the Settlement Agreement for settlement purposes only; approve the form of class notice attached as Exhibit A to the Settlement Agreement; conditionally approve plaintiff Gutierrez as the Class Representative and his counsel Crosner Legal, P.C. as Class Counsel, approve Phoenix Settlement Administrators as the Settlement Administrator, and set a final approval hearing for June 24, 2024, or the first available date on the Court's calendar thereafter.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Settlement Agreement, the Declarations of Brandon K. Brouillette and Jodey Lawrence, the Court's entire file herein, and on such further evidence and argument as may be presented at the hearing.

Dated: December 20, 2023          CROSNER LEGAL, P.C.


_____
JAMIE K. SERB
BRANDON K. BROUILLETTE
ZACHARY M. CROSNER
Attorneys for Plaintiff RODOLFO
GUTIERREZ

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Plaintiff Rodolfo Gutierrez submits the Stipulation and Settlement of Class and PAGA Claims ("Settlement Agreement") between himself and Defendant International Paper Company ("IPC" or "Defendant") to this Court for approval. In the preceding months, the Parties have expended significant time and resources in both formal and informal discovery, followed by protracted settlement discussions and private mediation in an effort to informally resolve Plaintiff's class action and PAGA representative action claims. The proposed $500,000 non-reversionary settlement will resolve the wage and hour claims of approximately 3,678 individuals employed by Defendant as non-exempt employees in California during the Class Period of July 1, 2021 to August 11, 2023.

Approval of a class action settlement consists of two steps. First, the Court makes a preliminary evaluation of fairness of the settlement. Manual for Complex Litigation, Fourth, § 21.632 (2004). If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982). As discussed below, in all particulars the proposed settlement falls within the "range of possible approval" and is potentially fair. Indeed, the settlement is entitled to a presumption of fairness since it was reached through arm's-length bargaining between experienced counsel, after a thorough exchange of formal and informal discovery. The negotiations were at arms-length and the Parties were only able to come to an agreement after completing a full-day mediation session with experienced and well-regarded neutral, the Hon. James J. DiCesare (Ret.). Although the mediation did not result in a settlement, Judge DiCesare was able to manage the Parties' expectations and significantly close the gap between each side's respective settlement positions. Thereafter, the Parties were able to finalize the terms of the

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

settlement.

Accordingly, Plaintiff respectfully quests that the Court: (1) preliminarily approve the proposed settlement; (2) conditionally certify the class described in Section I.F. of the Settlement Agreement for settlement purposes only; (3) approve and authorize the mailing of the proposed notice form to the Settlement Class Members; and (4) set a final approval hearing for June 24, 2024, or the Court's first available date thereafter.

## II. **STATEMENT OF FACTS**

Defendant International Paper Company (IPC") is a 125 year old company that today is a world-leading producer of fiber-based products, ranging from packaging materials to renewable basic materials such as pulp for diapers, tissue and other personal care products. During the class period, Defendant has operated 25 facilities in California. Plaintiff Gutierrez worked at IPC's manufacturing and processing facility in Carson, California as a corrugator for over twenty years, starting in 1999 until his termination in April 2022 as a condition of a worker's compensation settlement.   [Declaration of Brandon K. Brouillette ("Brouillette Decl."), ¶ 4.]

On October 7, 2022, Plaintiff Gutierrez filed a Collective and Class Action complaint in Los Angeles County Superior Court. On November 18, 2022, Defendant removed the action to this Court. On January 27, 2023, Plaintiff filed a First Amended Complaint ("FAC") that removed the unpaid overtime claim and carved out Defendant's prior settlement in the matter of <u>Elisa Arroyo v. International Paper Company</u>, Case No. 5:17cv6211 (C.D. Cal.) (the "Arroyo Action"), which effectively cut off the class period to begin on July 1, 2021. The FAC alleged a nationwide collective action claim brought under the FLSA for the alleged failure to pay minimum wages, and statewide class action claims based on Defendant's alleged failure to pay minimum wages, provide meal breaks, provide rest breaks, reimburse for business expenses, timely pay all wages owed, and

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

furnish complete and accurate wage statements. [Brouillette Decl., ¶ 5.]

On February 10, 2023, Defendant filed a Motion to Dismiss arguing Plaintiff's nationwide collective action claims should be dismissed because the Court lacked specific jurisdiction over out of state employees and that Plaintiff's minimum wage, meal break, rest break, business expense, and derivative claims were all preempted by section 301 of the Labor Management Relations Act. On March 21, 2023, the Court denied Defendant's Motion to Dismiss in its entirety. [Brouillette Decl., ¶ 6.]

On October 3, 2022, Plaintiff Gutierrez submitted his pre-litigation notice to the California Labor & Workforce Development Agency and Defendant as under the Private Attorneys General Act, Cal. Labor Code §§ 2698, et seq. After exhausting the required administrative remedies, on December 8, 2022, Plaintiff a separate, PAGA-only action in Los Angeles County Superior Court based the same alleged Labor Code violations as the pending class action. Defendant likewise removed the PAGA action to federal court, where it was assigned to this Court. [Brouillette Decl., ¶ 7; Exh. 2.]

The Parties subsequently exchanged initial disclosures, participated in a Rule 16 conference with the Court, and propounded and responded to extensive written discovery. IPC deposed the Plaintiff, and in turn Plaintiff deposed two Rule 30(b)(6) witnesses and several additional percipient witnesses. Plaintiff also secured a class list and interviewed a significant number of putative class members. [Brouillette Decl., ¶ 8.]

Ultimately, the Parties agreed to mediate and also agreed on a protocol for exchanging additional documents and information beforehand. Accordingly, both formally and informally, Defendant produced time and pay records for a subset of the class members/aggrieved employees, produced various documents reflecting its wage and hour policies and practices during the class period, exemplars of applicable wage statements, employee handbooks, etc., as well as

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

extensive information on the number of putative class members and potentially aggrieved employees, the number of work weeks and pay periods, and hourly rates of pay. [Brouillette Decl., ¶ 9.]

Before the mediation, Plaintiff's counsel also retained Berger Consulting Group to analyze the payroll data informally produced by Defendant in preparation for the mediation.  After reviewing Defendant's wage and hour policies and practices, and analyzing Defendant's time and pay records with the consulting expert's assistance, Plaintiff's counsel was able to evaluate the probability of class certification, success on the merits, and Defendant's maximum monetary exposure for all claims, and prepare a damages analysis prior to mediation. Plaintiff's counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation. Thus, Plaintiff and his counsel are familiar with the facts and the legal issues raised by the pleadings and were able to act intelligently in negotiating the settlement. [Brouillette Decl., ¶ 10.]

On April 28, 2023, the Parties participated in a private mediation with a highly-regarded professional neutral the Hon. James J. DiCesare (Ret.).  The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial.  The parties went into mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their position through trial and appeal if a settlement had not been reached. After extensive negotiations and discussions regarding the claims and defenses in this action, as well as the risks involved in further litigation, the Parties reached a tentative agreement, the material terms of which are encompassed within the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached to the Brouillette Declaration as Exhibit A. Finally, in order to fully effectuate a global settlement of all claims alleged in the consolidated Class and PAGA Actions, Plaintiff will file a Second Amended

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

Complaint following preliminary approval to combine the claims alleged in both cases for settlement purposes. [Brouillette Decl., ¶ 11.]

Plaintiff's counsel has conducted a thorough investigation into the facts of this case and, based on the foregoing discovery and their own independent investigation and evaluation, is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances, including but not limited to the risk of significant delay and the defenses that could be asserted by Defendant both to certification and on the merits, trial risk, and appellate risk. Plaintiff's counsel is further of the opinion that the PAGA-only component of the proposed settlement is likewise fair, reasonable and adequate, and advances the purposes underlying the PAGA statutes. [Brouillette Decl., ¶ 12.]

## III.   THE   COURT   SHOULD   PRELIMINARILY   APPROVE   THE   SETTLEMENT

### A.   Proposed Settlement Terms.

In total, Defendant will fund a common fund settlement in the amount of $500,000 (the "Gross Settlement Amount"). The Gross Settlement Amount is inclusive of all payments contemplated under the Settlement and accounts for: (1) all settlement awards to the Settlement Class Members; (2) the Plaintiff's incentive award not to exceed $7,500; (3) civil penalties of $30,000 in satisfaction of PAGA (of which $22,500 will go the LWDA, and the remaining $7,500 will go pro rata to the PAGA Group); (4) settlement administration costs of no more than $27,500; (5) reimbursement of litigation costs not to exceed $20,000; (6) attorneys' fees not to exceed $125,000 (25% of the Gross Settlement Amount); and (7) all employer-side state and federal payroll taxes due on the portion of the settlement payable as wages (estimated at approximately $6,000). No money will revert to Defendant. [Brouillette Decl., ¶ 13.]

### 1.    Calculation of Settlement Awards

Each Settlement Class Member who does not opt-out will be entitled to a pro rata share of the Net Settlement Amount based upon his or her total weeks worked in California during the Class Period.  Plaintiff estimates that, after taking out all deductions described above, the Settlement Awards to the Settlement Class Members will average about $90. [Brouillette Decl., ¶ 14].

As addressed below, the Parties believe a pro rata distribution based on the number of weeks worked by each Class Member during the Class Period will fairly allocate the settlement proceeds in light of the legal theories asserted and the evidence adduced prior to mediation.  A pro rata distribution formula based on work weeks offers a reasonable approximation of potential damages as each class member was subject to the alleged failure to pay wages due to an auto-deduct policy, the alleged improper meal break policies, and the alleged de facto meal and rest break violations. Since Settlement Class Members with longer tenures presumably suffered from more alleged violations over time, this formula likewise accounts for such individuals likely having more potential damages. [Brouillette Decl., ¶ 15.]

### 2.    Nature And Method Of Notice

Notice packages will be mailed by the Settlement Administrator to the last-known home address of all Settlement Class Members by first-class US mail within 45 days of entry of the Court's Order of Preliminary Approval. Notice packages will be mailed to each individual's last known address from Defendant's records, and the Settlement Administrator will check all addresses against the National Change of Address database prior to mailing.  The Settlement Administrator will resend notice packages returned with a forwarding address, and will conduct a skiptrace or similar search for a better address if no forwarding address is provided. [Brouillette Decl., ¶ 16.]

/////

### 3.    Objection & Opt-Out Procedures

The notice packages for all Settlement Class Members will notify them of their right to opt-out of the proposed class portion of the settlement by submitting a request for exclusion within 60 days after the Settlement Administrator initially mails their notice package, plus additional time for re-mailed notices. Those who opt-out will be excluded from the class only and will not be bound by Class Release contained in the Settlement Agreement.  Additionally, the notice will inform class members of their right to object to the class component of the settlement, and detail the procedure and deadline for doing so.  [Brouillette Decl., ¶ 17.]

### 4.    The Settlement Administrator

Subject to the Court's approval, the Parties propose that Phoenix Settlement Administrators serve as the Settlement Administrator. Settlement administration duties will include preparing, issuing, and mailing any and all notices; receiving and evaluating any disputes regarding work week information and estimated settlement awards; computing, processing, reviewing, and mailing individual settlement payments; generating settlement payment checks and related tax reporting forms; preparing tax returns and other required filings; preparing and submitting a claims administration declaration to the Court on final approval; administering the process regarding unclaimed checks; administering disbursements from the Net Settlement Amount; generating checks to class counsel for attorney's fees and costs, to Plaintiff for his incentive award, and to the LWDA for the State's share of PAGA civil penalties. Phoenix's costs will not exceed $27,500.  [Brouillette Decl., ¶ 18; Declaration of Jodey Lawrence, ¶¶ 2-16; Exhs. A-B.]

### 5.    Attorneys' Fees And Litigation Expenses

Per the Settlement Agreement, Plaintiff's counsel may request attorneys' fees on a common fund basis not to exceed 25% of the Gross Settlement Amount ($125,000), consistent with the Ninth Circuit "benchmark" fee in common fund

cases. Plaintiff's counsel may also request reimbursement of actual costs not to exceed $20,000. Any portion of the attorney's fees or costs not awarded by the Court shall revert to the Net Settlement Amount for distribution to the Settlement Class Members. Counsel will provide the Court with a final lodestar calculation and final costs in the motion for attorney's fees. [Brouillette Decl., ¶ 19.]

### 6. Incentive Award For Class Representative

Subject to this Court's approval, Plaintiff will seek an incentive award of $7,500, intended to compensate him for personally undertaking the obligations and risks associated with prosecuting the action. Plaintiff also executed a broader general release of any remaining individual claims she may personally have against Defendant. Any portion of the Incentive Award not approved by the Court shall revert to the Net Settlement Amount for distribution to the Settlement Class Members and shall not revert to the Defendant. [Brouillette Decl., ¶¶ 20-21.]

### 7. Releases

The proposed Releases contained in the Settlement Agreement are appropriately narrow in scope and only release claims associated with the specific factual allegations made in Plaintiff's SAC, or claims that could have been asserted based on those allegations.  [Brouillette Decl., ¶ 22.]

### B. The Settlement Meets the Requirements for Preliminary Approval as to the Class Claims

The policy of the federal courts is to encourage settlement before trial. Franklin v. Kaypro Corp., 884 F.2d 1222, 1225 (9th Cir. 1989).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." Id.

In class action cases, the district court must approve any settlement. Fed.R.Civ.P. 23(e).  As explained in the Manual for Complex Litigation, Fourth,

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

court approval of a class action settlement is a two-step process.  First, counsel submit the proposed terms of the settlement to the Court, and the Court makes a preliminary fairness evaluation.  If the preliminary evaluation of the settlement does not disclose a basis to doubt its fairness or other obvious deficiencies, the Court directs that notice be given to the class and sets a final fairness hearing. Manual for Complex Litigation, Fourth, § 21.632 (2004).

As to the PAGA-only portion of the proposed settlement, the statute requires the Court to "review and approve any settlement of any civil action filed pursuant to this part." Labor Code § 2699(*l*)(2). Since there is no statutory authority setting forth a specific standard for reviewing a PAGA settlement, most courts apply the standards applicable to review and approval of a class action settlement and look to whether, under all the circumstances, the settlement is fair, reasonable and adequate.  A court may also examine whether the proposed PAGA relief is "genuine and meaningful" and furthers the purposes of the statute. Salazar, 2017 WL 1135801, at *3-4; Delgado, 2019 WL 4059850, at *3-4.

The "universal standard" in evaluating the fairness of a settlement under Fed.R.Civ.P. 23(e) is whether the settlement is "fundamentally fair, adequate and reasonable." Fed.R.Civ.P. 23(e)(2); Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id.    As the Ninth Circuit recognizes, "the very essence of a settlement is compromise." Id. at 624.  "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Linney

v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) citing Officers for Justice, 688 F. 2d at 625.  Even if a proposed settlement amounts to a fraction of the potential recovery, this does not mean the settlement is necessarily inadequate.  Linney, 151 F.3d at 1242.

Preliminary approval should be granted if the proposed settlement falls "within the range of possible final approval." Gautreaux, 690 F.2d at 621 n.3; Conte & Newberg, Newberg on Class Actions (4th ed. 2002), § 11.25, at pp. 38-39. Stated another way, preliminary approval is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  In re: Traffic Executive Ass'n-Eastern Railroads, 627 F.2d 631, 634 (2d Cir. 1980).

A proposed settlement is presumed to be fair when (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005).  Here, all of the factors giving rise to a presumption of fairness exist. First, the proposed settlement was the product of arm's-length, non-collusive negotiations overseen by a well-respected, independent mediator. [Brouillette Decl., ¶ 11.]  Second, the class is represented by experienced counsel. [Brouillette Decl., ¶¶ 48-59.] Third, the parties exchanged a significant amount of information, both formally and informally, such that plaintiff and his counsel are able to make an informed recommendation about the settlement. [Brouillette Decl., ¶¶ 8-12.]  Thus, the settlement is presumed to be fair.

In evaluating a class settlement, the district court should also weigh the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement;  the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class

members to the proposed settlement." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998).  The district court should satisfy itself that the settlement is not the product of collusion between the plaintiff and the defendant.  <u>Class Plaintiffs v. Seattle</u>, 955 F.2d. 1268, 1290 (9th Cir. 1992). However, "[a]t the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." <u>Litty v. Merrill Lynch & Co.</u>, 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, <u>Acosta v. Trans Union, LLC</u>, 243 F.R.D. 377, 386 (C.D. Cal. 2007), in light of the strong judicial policy in favor of settlement of class actions. <u>Class Plaintiffs</u>, 955 F.2d at 1276.

Here, except for the absence of a governmental participant, each factor weighs in favor of approving the settlement.

### 1.    The Strength of Plaintiff's Case.

Prior to reaching this settlement, Plaintiff's counsel conducted both formal and informal discovery and investigation into the claims alleged by Plaintiff, including, among other things, depositions of Plaintiff, two witnesses designated by Defendant as the persons most knowledgeable on numerous subjects, the deposition of a supervisor, interviews of other percipient witnesses, including dozens of putative class members, as well as the review of documents and data necessary to analyze the merits of Plaintiff's claims and calculate potential damages. This included reviewing and analyzing handbooks and other policy documents, reviewing and analyzing time and payroll data produced by Defendant, and preparing a damages analysis with the assistance of a retained expert. Plaintiff's counsel's calculations are based on data from Defendant including class size and number of PAGA aggrieved employees (total current and former employees), pay period data, average hourly rate of pay, time records, pay records, and policy documents. In addition, Plaintiff's counsel has investigated the applicable law regarding the claims and defenses to the claims asserted in the

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

litigation. Thus, Plaintiff and his counsel were able to act intelligently and effectively in negotiating the proposed Settlement. [Brouillette Decl., ¶¶ 8-10, 23.] Based on this investigation, discovery and analysis, Plaintiff and his counsel evaluated the strengths and weaknesses of her claims as follows.

On Plaintiff's unpaid wage claims, he argues Defendant maintained policies and practices that required Plaintiff and other employees to work off the clock, both before and after their shift. Specifically, Plaintiff alleges employees had to report to work by their scheduled start time and be prepared to immediately start working. As a result, employees were required to don and doff employee uniforms and PPE (including face shields, and ear plugs), retrieve and safely secure radios, and safely secure their tools all while off the clock. In addition, Defendant required all employees to use the same computer to clock in and out for their shifts, and employees reporting to work at the same time would routinely need to wait in line several minutes to clock in. Plaintiff alleges he and other employees would plan to arrive 30 minutes early to ensure that they had sufficient time to complete their necessary pre-shift activities, clock in, and report to work on time.  [Brouillette Decl., ¶ 24.]

In response, IPC argued its time keeping policies and procedures accurately recorded and paid for all hours worked, and that off the clock work was strictly against company policy. Thus, per IPC, even if any off the clock work occurred, it would have been unauthorized and performed without the company's knowledge, and therefore not compensable. <u>White v. Starbucks Corp.</u>, 497 F.Supp.2d 1080, 1083 (N.D. Cal. 2007) (employer must have actual or constructive knowledge of the off the clock work for liability to attach). [Brouillette Decl., ¶ 25.]

Next, Plaintiff alleges that Defendant failed to include all non-discretionary pay when calculating an employee's "regular rate" of pay, which resulted in the miscalculation of the corresponding overtime rate and underpayment of overtime. Under California law, "[a]n employee's 'regular rate of pay' for purposes of Labor

Code § 510 and the IWC wage orders is not the same as the employee's straight time rate (i.e., his or her normal hourly wage rate). Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any non-hourly compensation the employee has earned." <u>Alvarado v. Dart Container Corp.</u>, 4 Cal.5th 542, 553 (2018). Per Plaintiff, Defendant failed to include "Call Allowance" attendance bonuses in their regular rate of pay calculations. Defendant paid employees a "Call Allowance" attendance bonus if they reported to work during non-scheduled work hours, such as to fill in when extra help was needed or to fill in if someone was missing. The Call Allowance attendance bonus is an additional amount that Defendant pays on top of the actual hours worked by the employee.  Although Defendant's exposure on this claim is a nominal sum, it has the potential to trigger derivative penalties (as further detailed below) which will serve to greatly increase Defendant's exposure in this case. [Brouillette Decl., ¶ 26.]

On the meal break claims, Plaintiff argued Defendant improperly required Plaintiff and other class members to work "on duty" meal periods. Plaintiff and other class members worked in departments deemed a "continuous run operation" that would operate through lunches and breaks. Although lunches and breaks would be scheduled so as to allow continuous coverage and allow employees to rotate out and receive their breaks, Plaintiff argued that this policy nevertheless meant that employees remained on call and on duty during their breaks, and could be called away at any time as business circumstances dictated.  Further, according to Plaintiff, IPC did not properly qualify for the very limited "on duty" meal period exception allowed under California law.  <u>Lubin v. Wackenhut Corp.</u>, 5 Cal. App. 5th 926 (2016) <u>reh'g denied</u> (Dec. 14, 2016). As a result, Plaintiff contends meal periods in continuous run departments all resulted in meal period violations since the employees always remained "on duty." [Brouillette Decl., ¶ 27.]

Defendant contended it maintained a fully-compliant meal break policy at all times, and it always provided the class members/aggrieved employees with the opportunity to take all mandated meal breaks on a fully compliant basis, and thus met the requirements imposed by California law.    For the continuous run departments, per Defendant it had adequate staffing to allow all employees to take their breaks while maintaining operations and simply because individuals might occasionally have their breaks interrupted by work did not render all breaks "on duty."    Thus, Defendant argued that if employees missed a break, or had a break interrupted without proper compensation, it was in violation of company policy and, once again, a multitude of individual inquiries would be necessary to determine the reason behind any alleged violations. While Plaintiff believes Defendant's records and her testimony and that of her co-workers will support this claim, he nevertheless must acknowledge Defendant has a viable and multi-layered defense.  [Brouillette Decl., ¶ 28.]

On the rest break claim, Plaintiff's similarly argued the "continuous run" issue meant breaks essentially were "on duty" and therefore not compliant since the employees never were fully relieved of all employer control. Defendant advanced several defenses to this claim. First, Defendant again argued its written rest period policy was fully compliant and expressly authorized all rest periods required under California law, and that the occasional or intermittent interruption of break did not create a "policy" whereby all such breaks were on duty.  Defendant further argued that, since it is not required to record rest periods, any evidence of a failure to authorize rest periods and/or discouragement from taking rest periods would be purely anecdotal and may not result in certification of Plaintiff's rest period claims. Defendant also contended it is only liable if Plaintiff can prove, on a shift-by-shift basis, that Class Members actually did not take a rest break or receive a compliant break. This arguably would have made class certification more difficult and/or rendered trial of the PAGA claims unmanageable. Therefore, a

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

sharp compromise was in order on this claim. [Brouillette Decl., ¶ 29.]

Plaintiff's claims for penalties under Labor Code §§ 203 and 226 are derivative of the underlying unpaid wage claims and, accordingly, they would essentially rise or fall with Plaintiff's success or failure on those primary claims. Further, Plaintiff had to account for the discretionary nature of such awards and the "good faith" and other defenses available to Defendant. Amaral v. Cintas Corp. No. 2,163 Cal.App.4th 1157, 1203-4 (2008) (employer did not willfully fail to pay wages under Labor Code § 203 even though the class prevailed on the merits on the underlying claim for failing to pay living wages). [Brouillette Decl., ¶ 30.]

Finally, on the PAGA claims, in addition to the merits defenses addressed above, Plaintiff recognizes that the Court has broad discretion to reduce the amount of PAGA civil penalties awarded "based on the facts and circumstances of a particular case" if "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Lab. Code § 2699(h). Plaintiff is acutely aware of a number of recent PAGA cases resulting in nominal penalty awards via settlement or even after the plaintiff prevailed on the merits at trial. E.g., Cotter v. Lyft, Inc., 193 F.Supp.3d 1030 (N.D. Cal. 2016) (PAGA settlement was fair and reasonable even though it resulted in a 97.5% reduction from the maximum penalty); Carrington v. Starbucks Corp., 30 Cal.App.5th 504 (2018) (trial court awarded penalties of $5 per pay period after a bench trial, which decision was upheld on appeal); Fleming v. Covidien, 2011 U.S. Dist. LEXlS 154590, *8-9 (C.D. Cal. 2011) (court reduced potential PAGA penalties by over 82% after a bench trial). Accordingly, Plaintiff applied a significant discount to the value of the PAGA claims. [Brouillette Decl., ¶ 31.]

Accordingly, the Parties allocated $30,000 to PAGA penalties, and Plaintiff submits this amount is reasonable under the circumstances and in line with comparable settlements in other wage and hour class actions in California. E.g., Van Kempen v. Matheson Tri-Gas, Inc. (N.D. Cal. Aug. 25, 2017) 2017 U.S. Dist.

LEXIS 137182 (granting final approval of $5,000 PAGA penalty from $370,000 settlement, or 1.4 percent of total settlement); <u>Slavkov v. First Water Heater Partners I</u> (N.D. Cal. July 25, 2017) 2017 U.S. Dist. LEXIS 116303 (finding a $7,500 PAGA payment reasonable when measured against the overall settlement of $345,000 and the possible weaknesses in Plaintiffs' case, or 2.2 percent of total settlement). Additionally, the LWDA has been informed of the terms of the PAGA portion of the settlement, and will be able to weigh in as necessary. <u>Jennings v. Open Door Mktg. Inc.</u> (N.D. Cal. Oct. 3, 2018) 2018 U.S. Dist. LEXIS 171356, at *27 (approving settlement with PAGA penalties of 0.6% where "[p]laintiffs [have] submitted the settlement agreement to the LWDA, and the LWDA has not objected to the settlement.")

The settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiff's claims. Furthermore, even if Plaintiff obtained certification of all or some of the claims, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and reduce any recovery by the Settlement Class Members. Similarly, on the PAGA claims, the Court could easily rule such claims are unmanageable for the reasons discussed above, or ultimately exercise its discretion to reduce any award of civil penalties significantly.  While Plaintiff is confident in the merits of his claims, legitimate controversies exist as to each cause of action and Defendant has multiple potential defenses to both class certification and on the merits. Plaintiff also recognizes that proving the amount due to each Class Member would be a lengthy, expensive, and uncertain task. [Brouillette Decl., ¶ 32.]

Although Plaintiff believes he could have prevailed on one or more claims, there were no guarantees. When the risks of prevailing at both certification and trial are factored into the equation (particularly in light of the result in the prior Arroyo Action), as to both the class and PAGA claims, the settlement value is reasonable and supported. Also, the assigned certification probabilities far exceed the rate of

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

certification in contested motions in California over the past 5 years, based upon data available through the California Courts website. See Findings of the Study of California Class Action Litigation, 2000-2006, available at http://www.courts.ca.gov/documents/class-action-lit-study.pdf (finding that only 21.4% of all class actions were certified either as part of a settlement or as part of a contested certification motion). In other words, well under 20% of all class actions are certified by way of contested motion. The probabilities are also in line with reductions of civil penalties awarded in PAGA cases, including many that have gone to trial. [Brouillette Decl., ¶¶ 33-35.]

In sum, when the risks of litigation, the uncertainties involved in achieving class certification, the potential applicability of hundreds of arbitration agreements, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, etc., all are accounted for, the total settlement amount of $500,000 is within the "ballpark" of reasonableness both overall and as to both component parts, and preliminary approval of the class action settlement is appropriate.

## 2. The Risk, Expense, Complexity and Likely Duration of Further Litigation.

Absent settlement, litigation of this matter will remain highly contentious leading up to class certification and potentially beyond.  Without the proposed settlement, the parties would be required to litigate class certification, as well as the ultimate merits of the case - a process that is long, complex, and expensive. If the settlement is not approved, Defendant will oppose class certification and conduct further dispositive motion practice to defend against Plaintiff's claims, as occurred in the prior Arroyo Action. Furthermore, even if Plaintiff secured and maintained class certification and prevailed on the merits, he almost certainly would face a protracted appellate process. Settlement of this matter will conserve the resources of the Court and the parties, and as a result Plaintiff submits this factor

weighs heavily in favor of preliminary approval. [Brouillette Decl., ¶¶ 32-35.]

### 3. The Risk of Maintaining Class Action Status Throughout the Trial.

Plaintiff and his counsel strongly believe their lawsuit is maintainable as a class action. However, there are risks associated with certifying a class in the first instance, and as with any certified class action there is always the potential for future decertification following merits discovery.

This is particularly true in this matter given the nature of Defendant's business and the fact that the putative class members worked at some 25 different locations, each of which per IPC maintained at least some site specific local policies and procedures. While Plaintiff contends there are common themes applicable to all Class Members based on Defendant's own policies, he also recognizes the very real possibility that the Court might agree with Defendant and find insurmountable individual issues are present given the sheer number of locations across California where the class members worked. IPC argued Plaintiff could not adequately represent individuals who worked at other facilities for this reason, and further that the various wage and hour policies and procedures at other facilities would both create myriad individual issues and render merits litigation and trial unmanageable. While Plaintiff contended procedural mechanisms such as subclassing or sampling and statistical analysis could overcome these arguments, Plaintiff nevertheless acknowledged IPC's arguments against class certification present considerable risk, and consequently this factor suggests settlement is preferable to continued litigation. [Brouillette Decl., ¶ 35.]

### 4. The Amount Offered in Settlement

Defendant has agreed to settle the action for a Gross Settlement Amount of $500,000, which amount is eminently reasonable in light of Defendant's significant defenses to certification of the alleged claims, the potentially applicable CBAs, and additional defenses on the merits. Through the extensive amount of information

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

exchanged by the parties, Plaintiff weighed the risks of continued litigation against the benefits of the proposed settlement and determined it to be more than reasonable.

A settlement is not judged against what plaintiff might recover had she prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. <u>Linney</u>, 151 F.3d at 1242; <u>White v. Experian Information Solutions, Inc.</u>, 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011) (rejecting contention settlement was not fair and reasonable even though it represented 99% discount off the maximum value of the claims); <u>see also</u> <u>Wershba v. Apple Computers, Inc.</u> 91 Cal.App.4th 224, 246, 250 (2001) ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.").

In determining whether the amount offered in settlement is fair, a court should compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 458 (9th Cir. 2000). Using the pre-mediation formal and informal production of payroll data, time data, and various documents evidencing Defendant's wage and hour policies and procedures, Plaintiff's counsel estimated possible damages based on various theories of liability. Using that data, Plaintiff ran various calculations under different theories of liability and estimated IPC theoretical exposure at approximately $37 million on the Class claims, and about $33 million in potential civil penalties for the PAGA claims. [Brouillette Decl., ¶¶ 36-37.] These calculations, however, do not apply any risk adjustment to Plaintiff's claims to account for Defendant's multiple factual and legal defenses - of which there are many.

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

As addressed above, on the class claims, Plaintiff faced the risk that some or all of the claims would not be certified for class treatment, that a certified class could be decertified, or that a jury would decide some or all of the claims lacked merit. Similarly, Plaintiff discounted the potential PAGA penalties for several reasons -- as discussed above, the Court possesses wide discretion to reduce such penalties, and many recent PAGA cases have resulted in nominal penalty awards even after plaintiff prevailed on the merits.  Further, Defendant had strong arguments that trial of the PAGA claims would have been unmanageable in light of the varying locations where the class members worked.

And, as with any case, a settlement discount was warranted to account for the fact that continued litigation would have resulted in increased costs and attorney's fees, and would have resulted in significant delay while the parties fought over class certification, merits discovery and trial (assuming certification), and potential appeals, all of which would not necessarily result in conferring significant additional benefit to the class.

Plaintiff and his counsel discounted the value of the class claims consistent with these risks and carefully weighed the likelihood of the class receiving substantially greater benefit if the litigation continued. They concluded – in light of the very real risks discussed above – settlement on the proposed terms, without further prolonged and costly litigation, was in the best interests of the class and also that the settlement of the PAGA claims is meaningful and further the purposes underlying the PAGA statutory scheme.  [Brouillette Decl., ¶¶ 38-41.]

Even on a risk discounted basis, the settlement will provide significant monetary compensation to the Class Members for their unpaid wages and other damages while eliminating the risks of losing class certification, obtaining a lower amount at trial with greater costs, or losing altogether. Importantly as well, the proposed settlement is non-reversionary and will provide immediate benefits to the Class Members without a claims process.  <u>White</u>, 803 F.Supp.2d at 1098; <u>c.f.</u>,

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS
AND AUTHORITIES

Federal Judicial Center, <u>Managing Class Action Litigation: A Pocket Guide for Judges</u> (3d ed. 2010) at 20, available at <u>http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf</u> (reversionary provisions and/or cumbersome claims process may indicate lack of fairness).

In light of the many and significant obstacles Plaintiff faces in pursuing these claims, Plaintiff submits the overall size of the recovery is fair. Further, the significant individual settlement awards and the fact that the settlement is entirely in line with other settlements involving similar claims both support a finding the proposed settlement is fair, adequate, and reasonable. Accordingly, this factor weighs in favor of approval as well.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings.

Prior to reaching this settlement, Plaintiff's counsel conducted both formal and informal discovery and investigation into the claims alleged, including reviewing and analyzing handbooks and other policy documents, reviewing and analyzing time and payroll data produced by Defendant, deposing IPC's corporate designees, interviewing other putative class members, and preparing a damages analysis with the assistance of consulting experts. [Brouillette Decl., ¶¶ 8-10, 23, 41.] Plaintiff's counsel's calculations are based on reliable data including class size (total current and former employees) and the number of aggrieved employees, work week/pay period data, average hourly rate of pay, time records, payroll records, and extensive policy documents. In addition, Plaintiff's counsel has investigated the applicable law regarding the claims and defenses to the claims asserted in the litigation. Thus, Plaintiff and his counsel were able to act intelligently and effectively in negotiating the proposed Settlement. Plaintiff's counsel has sufficient familiarity with the facts of the case to make an informed decision about the fairness of the settlement.

### 6. The Experience and Views of Counsel.

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's counsel has extensive experience in wage and hour class actions and are well-qualified to prosecute this action. [Brouillette Decl., ¶¶ 48-59.] Based on this combined experience, and after factoring in the risks articulated above, Plaintiff's counsel are confident the proposed settlement accords with the prevailing sense of "fair, adequate, and reasonable" in both the class action and PAGA contexts, and that the PAGA-only component of the settlement furthers the purposes underlying the PAGA statutes.

### 7.   The Reaction of the Class to the Settlement.

To date, no class member has expressed any opposition to the settlement. [Brouillette Decl., ¶ 44.] In any event, class members will have the opportunity to express any opposition during the notice period. Similarly, the LWDA has been provided with the Settlement Agreement, this motion, and given notice of the preliminary approval hearing. [Brouillette Decl., ¶ 42; Exh. 3.]

### 8.   No Collusion Between the Parties or their Counsel.

As discussed above, the settlement is the product of adversarial, non-collusive, and arm's-length bargaining between experienced counsel, facilitated by a well-respected mediator. The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. <u>See, e.g.,</u> <u>Satchell v. Fed Ex. Corp.</u>, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). There are no undisclosed side agreements between the parties or their counsel. [Brouillette Decl., ¶ 43.]

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS.

The parties jointly request certification of a Fed.R.Civ.P. 23(b)(3) opt-out class for settlement purposes only, consisting of all persons employed by Defendant in California as non-exempt employees, Class Period (May 10, 2014 to the date of preliminary approval). The Class meets the requirements for class certification under Fed.R.Civ.P. 23(a) and (b)(3).

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

1   First, the Class consists of at least 3,678 members.  In <u>Stewart v. Abraham</u>,

2   275 F.3d 220, 226-27 (3d Cir. 2001), the court observed that if a class exceeds 40

3   members, the numerosity requirement is met. Further, the class members are

4   ascertainable by reference to Defendant's personnel and payroll records.

5   [Brouillette Decl., ¶ 44.]

6   Second, Plaintiff contends there are common questions of fact and law, and

7   these predominate over individual questions. These common questions include: (1)

8   Defendant's common policies and practices for failing to pay wages due by

9   allegedly requiring "off the clock" work and miscalculating/underpaying overtime;

10   (2) Defendant's common policies and practices regarding on duty meal periods,

11   and whether Defendant paid premium wages in lieu of missed or non-compliant

12   meal periods; (3) Defendant's common policies regarding rest periods and payment

13   of the required premium wages in lieu of missed or non-compliant rest periods; and

14   (4) whether these alleged violations support the derivative claims for improper

15   itemized wage statements, waiting time penalties, and unfair competition.  These

16   common questions predominate over such individual questions as a class member's

17   measure of damages. [Brouillette Decl., ¶ 45.]

18   Third, Plaintiff's claims are typical of those of the other class members.  Mr.

19   Gutierrez is a former non-exempt IPC employee who worked in California during

20   the relevant time period, and who alleges he was injured by Defendant's common

21   practices alleged above. [Brouillette Decl., ¶ 46.]

22   Fourth, Mr. Gutierrez is an adequate class representative because he has

23   retained competent counsel and he has no interests adverse to those of the class.

24   [Brouillette Decl., ¶¶ 48-59.]

25   Finally, a class action is superior to other procedural mechanisms for

26   resolving these claims.  Because of the size of the class, individual joinder is

27   impractical.  A class action will permit a large number of similarly situated

28   individuals to resolve their common claims in a single forum without unnecessary

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES

expense, duplication of effort, and burden on the judicial system. [Brouillette Decl., ¶ 47.]

## V.    PAGA NOTICE TO THE LWDA

Prior to filing this motion, as required by Labor Code § 2699(*l*)(2) Plaintiff provided notice of the proposed settlement of the PAGA claims and the approval hearing to the LWDA.  [Brouillette Decl., ¶ 42; Exh. 3.]

## VI.    CONCLUSION

For the foregoing reasons, the parties jointly request that the Court preliminarily approve the proposed settlement, conditionally certify the proposed Class for settlement purposes only, approve the proposed notice form, and set a final approval hearing for June 24, 2024, or on the Court's first available date thereafter.

Dated: December 20, 2023          CROSNER LEGAL, P.C.


JAMIE K. SERB
BRANDON K. BROUILLETTE
ZACHARY M. CROSNER
Attorneys for Plaintiff RODOLFO
GUTIERREZ

NOTICE OF MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES