Zachary M. Crosner (SBN 272295)
   E-Mail: zach@crosnerlegal.com
Jamie Serb (SBN 289601)
   E-Mail: jamie@crosnerlegal.com
Brandon K. Brouillette (SBN 273156)
   E-Mail: bbrouillette@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, CA 90210
Telephone: (866) 276-7637
Facsimile: (310) 510-6429

Attorneys for Plaintiff
RODOLFO GUTIERREZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO GUTIERREZ, as an individual on behalf of himself and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY, a New York corporation,<br><br>Defendants. | Case No.: 2:22-cv-08460-JFW-RAO<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declarations of Brandon K. Brouillette, Rodolfo Gutierrez, and Yami Burns; [Proposed] Order]<br><br>Date: June 24, 2024<br>Time: 1:30 p.m.<br>Place: Ctrm 7A<br><br>Hon. John F. Walter |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 24, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7A of the above-captioned Court, located at 350 West First St., Los Angeles, California, the Hon. John F. Walter presiding, plaintiff Rodolfo Gutierrez will move move the Court for an order granting final approval of a proposed class action settlement of the above-captioned action, approving the payment of civil penalties to the State of California, for an enhancement award of $7,500 to plaintiff, and approving payment of the Settlement Administrator's fees and costs. By way of a separately noticed motion, Plaintiff seeks an award of "benchmark" attorney's fees equal to 25% of the gross settlement amount ($125,000), plus actual litigation costs of $19,669.68.

This motion is made under Fed.R.Civ.P. 23(e) on the grounds that the settlement is fair, reasonable and adequate and in the best interests of the class, and meets all requirements for class certification. The request for the class representative service payment is fair and reasonable under the circumstances of the case.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Stipulation and Settlement Agreement of Class Action and PAGA Claims (Docket No. 57-1), the Declarations of Brandon Brouillette, Rodolfo Gutierrez, and Yami Burns, the entire Court file in this matter, and on such further evidence and argument as may be presented at the hearing.

Dated: May 20, 2024                                CROSNER LEGAL, P.C.

                                                   _____
                                                   ZACHARY M. CROSNER
                                                   JAMIE K. SERB
                                                   BRANDON K. BROUILLETTE
                                                   Attorneys for Plaintiff RODOLFO
                                                   GUTIERREZ

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS.................................................................................... 1

III. THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT ............................................................................................................................. 2

    A. Class Certification ..................................................................................... 3

    B. Settlement Funds and Distribution ........................................................... 3

    C. Settlement Administration ........................................................................ 4

    D. Attorney's Fees And Litigation Expenses ............................................... 5

    E. Releases..................................................................................................... 5

    F. PAGA Penalties ........................................................................................ 5

IV. THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL .......................................................................................................... 5

    A. The Strength of Plaintiff's Case................................................................ 7

    B. The Risk, Expense, Complexity and Likely Duration of Further Litigation ................................................................................................... 8

    C. The Risk of Maintaining Class Action Status Throughout................ 9

    the Trial .......................................................................................................... 9

    D. The Amount Offered in Settlement ......................................................... 9

    E. The Stage of the Proceedings and the Extent of Discovery Completed ............................................................................................... 10

    F. The Experience and Views of Counsel.................................................. 11

    G. The Reaction of the Class to the Settlement.......................................... 11

    H. No Collusion Between the Parties or their Counsel. ........................ 12

VI. THE SETTLEMENT ADMINISTRATOR'S FEES ............................ 12

VII. THE PROPOSED CLASS REPRESENTATIVE PAYMENT IS REASONABLE ................................................................................................... 12

VIII. CONCLUSION ................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

In re: American Bank Note Holographics,
    127 F.Supp.2d 418 (S.D.N.Y. 2001) ................................................................. 11

Class Plaintiffs v. Seattle,
    955 F.2d. 1268 (9th Cir. 1992) .......................................................................... 7

Duran v. U.S. Bank,
    59 Cal.4th 1 (2012) ............................................................................................ 9

In re: Elisa Arroyo v. International Paper Company,
    Case No. 5:17cv6211 (C.D. Cal.) ...................................................................... 2

In re: GMC Pick-Up Truck Fuel Tank Prods. Litig.,
    55 F.3d 768 (3d Cir. 1995) ................................................................................ 8

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................... 7

Jordan v NCI Grp., Inc.,
    2018 U.S. Dist. LEXIS 25297 (C.D. Cal. Jan. 5, 2018) ................................... 10

Kakani v. Oracle Corp.,
    2007 WL 1793774 (N.D. Cal. June 19, 2007) ................................................. 10

Linney v. Cellular Alaska Partnership,
    151 F.3d 1234 (9th Cir. 1998) ...................................................................... 6, 7

Mandujano v. Basic Vegetable Prods., Inc.,
    541 F.2d 832 (9th Cir. 1976) ........................................................................... 11

Moniz v. Adecco USA, Inc.,
    72 Cal.App.5th 56 (2021) .................................................................................. 7

Nelson v. Avon 5 Prod., Inc.
    (N.D. Cal. Feb. 24, 2017) 2017 WL 733145 ................................................... 13

Officers for Justice v. Civil Service Comm'n,
  688 F.2d 615 (9th Cir. 1982) ................................................................................ 6

Torchia v. W.W. Grainger, Inc.
  (E.D. Cal. 2014) 304 F.R.D. 256 ........................................................................ 13

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 6

Wershba v. Apple Computers, Inc.,
  91 Cal.App.4th 224 (2001) ................................................................................... 7

White v. Experian Information Solutions, Inc.,
  803 F.Supp.2d 1086 (C.D. Cal. 2011) ............................................................ 7, 10

**Statutes**

California Civil Code Section 1542 ................................................................................5

Labor Code § 2699(*l*)(2) .................................................................................................5

**Other Authorities**

Fed.R.Civ.P. 23(e) ............................................................................................................6

Fed.R.Civ.P. 23(e)(2) ........................................................................................................6

Managing Class Action Litigation: A Pocket Guide for Judges (3d ed. 2010), available at http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf ............................. 10

# MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Plaintiff and Class Representative Rodolfo Gutierrez seeks final approval of a non-reversionary settlement resolving certain wage and hour claims on behalf of 3,489 individuals who worked for Defendant International Paper Company ("IPC" or "Defendant") as non-exempt employees in California from July 1, 2021 to August 11, 2023. The proposed $500,000 settlement provides approximately $281,601 in cash payments to the Class Members, with the remaining balance of approximately $218,399 covering a modest and well-earned service award to Plaintiff, settlement administration costs, payroll taxes, civil penalties to the State of California, and an award of "benchmark" attorney's fees and actual litigation costs. The parties and their counsel finalized the settlement after extensive and difficult arms-length negotiations overseen by an experienced and highly regarded mediator. The Court preliminarily approved the settlement on January 29, 2024.

Since then, the Court-approved notice form was mailed to the Class Members, who reacted very favorably to the settlement. Only one class member requested exclusion, and there are no objections. Accordingly, on behalf of himself and the Class, Plaintiff respectfully requests the Court grant this motion, give its full and final approval to the settlement, and enter judgment accordingly.

## II.  STATEMENT OF FACTS

Plaintiff outlined the details of the procedural and factual background of this matter in his Motion for Preliminary Approval of Class and Representative Action Settlement (filed January 4, 2024, 2023; Docket No. 57). To briefly re-familiarize the Court with this matter, on October 7, 2022, Plaintiff Gutierrez filed a Collective and Class Action complaint in Los Angeles County Superior Court, which matter Defendant removed the action to this Court. On January 27,

1  2023, Plaintiff filed a First Amended Complaint ("FAC") that removed the unpaid overtime claim and carved out Defendant's prior settlement in the matter of <u>Elisa Arroyo v. International Paper Company</u>, Case No. 5:17cv6211 (C.D. Cal.) (the "Arroyo Action"), which effectively cut off the class period to begin on July 1, 2021. The FAC alleged a nationwide collective action claim brought under the FLSA for the alleged failure to pay minimum wages, and statewide class action claims based on Defendant's alleged failure to pay minimum wages, provide meal breaks, provide rest breaks, reimburse for business expenses, timely pay all wages owed, and furnish complete and accurate wage statements. [Brouillette Decl., ¶ 2.]

After in-depth formal and informal discovery, the parties participated in an adversarial mediation in April 2023 with the Hon. James Di Cesare (Ret.). Following a full day of contentious negotiations and discussions regarding the claims and defenses in this action, as well as the risks involved in further litigation, the Parties ultimately reached agreement on all material terms. [Brouillette Decl., ¶¶ 3-5.]

On January 29, 2024, this Court issued its Order granting preliminary approval to the settlement. [Docket No. 62.] Notices were mailed to all Class Members on March 14, 2024, with a 60-day window (to May 13, 2024) for Class Members to opt out or object to the proposed settlement. [Declaration of Yami Burns ("Burns Decl."), ¶¶ 5, 7-9.]

### III.  THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

In total, Defendant will fund a common fund settlement in the amount of $500,000 (the "Gross Settlement Amount"). The Gross Settlement Amount is inclusive of all payments contemplated under the Settlement and accounts for: (1) all settlement awards to the Settlement Class Members; (2) the Plaintiff's incentive award not to exceed $7,500; (3) civil penalties of $30,000 in satisfaction of PAGA (of which $22,500 will go the LWDA, and the remaining $7,500 will go pro rata to

the PAGA Group); (4) settlement administration costs of $27,500; (5) reimbursement of litigation costs of $19,669.68; (6) benchmark attorney's fees not to exceed $125,000 (25% of the Gross Settlement Amount); and (7) all employer-side state and federal payroll taxes due on the portion of the settlement payable as wages, in the amount of $8,729. No money will revert to Defendant. [Brouillette Decl., ¶ 6.]

### A. Class Certification

Through its January 29, 2024 Order, the Court granted conditional certification of a settlement class defined as "all individuals who worked for International Paper Company in the State of California as non-exempt employees during the Class Period (July 1, 2021 through August 11, 2023." The Claim Administrator ultimately mailed class notices to 3,489 individuals identified as members of the Class. [Burns Decl., ¶ 8.] Nothing has changed to require reconsideration of the findings supporting the Court's certification of the Settlement Class.

### B. Settlement Funds and Distribution

Approximately $281,619 from the Gross Settlement Amount will be distributed to the Class Members, while an additional $7,500 in civil penalties will be distributed to the PAGA Group. This is a cash settlement that did not require Class Members to submit a claim form to receive their settlement share, and both the Class Members and PAGA Group members will receive their settlement checks automatically via First Class U.S. Mail. [Brouillette Decl., ¶ 7.] Only one class member opted out of the settlement, for a 99.97% participation rate. [Burns Decl., ¶ 7.]

Each Class Member who did not opt-out will be entitled to a pro rata share of the Net Settlement Amount based upon his or her total weeks worked during the Class Period. As addressed on preliminary approval, the Parties believe a pro rata distribution based on the number of weeks/pay periods worked by each

participating individual during the relevant time periods will fairly allocate the settlement proceeds in light of the legal theories asserted and the evidence adduced prior to mediation. These methods are intended to ensure each individual receives a portion of the available settlement funds corresponding to the relative value of his or her potential claims, and the proposed allocation provides the most reasonable way to compensate Class Members based on the amount of time they worked for IPC and the number of instances they allegedly were not compensated properly, missed meal and rest periods, etc. [Brouillette Decl., ¶ 8.] Awards will average about $80 for the Class Members, with the maximum award of about $144. The average PAGA award is about $2.15. [Burns Decl., ¶¶ 12-13.]

### C. Settlement Administration

The Settlement Administrator, Phoenix Settlement Administration, carried out the notice plan contemplated by the settlement and as ordered by the Court, including running each address through the National Change of Address database. [Burns Decl., ¶¶ 3-6.] The Class Notice, previously approved by the Court, duly informed Class Members of the settlement terms, including the estimated relief each Class Member will receive, the amounts to be requested for attorney's fees and class representative enhancement award, and the right to opt out of or object to the settlement. [Burns Decl., ¶ 5, Exh. A.] The Settlement Administrator mailed at total of 3,489 Notices on March 14, 2024. [Burns Decl., ¶¶ 5.] Zero Notices ultimately were deemed undeliverable, meaning all individuals eligible to participate in the Settlement received their respective Notice. [Burns Decl., ¶ 6.] The 60-day response window for opting out or objecting to the class component of the settlement expired on May 13, 2024. [Burns Decl., ¶¶ 7-9.] As of the filing of this motion, no objections and one request for exclusion were received by Phoenix. [Burns Decl., ¶¶ 7-8.] There are no outstanding disputes regarding the information used to calculate class member settlement shares. [Burns Decl., ¶ 9.]

### D. Attorney's Fees And Litigation Expenses

IPC agreed not to oppose an application for an award of attorney's fees up to one-quarter of the gross settlement fund, or $125,000, as well as litigation costs and expenses up to $20,000.00 (only $19,669.68 is requested). Plaintiff's counsel filed a separate motion for attorney's fees and costs, set to be heard concurrently with this motion, attesting to the nature and scope of the work performed as well the costs and expenses incurred. [Brouillette Decl., ¶ 9.] Importantly, not one class member objected to the proposed award of fees and costs. [Burns Decl., ¶ 8.]

### E. Releases

Upon final approval, Class Members will release IPC and other Released Parties (as defined in the Stipulation) from all claims set forth in the operative complaint, or that could have been pleaded based on the factual allegations underlying the operative complaint, including PAGA claims, from May 10, 2014 to February 14, 2020. No one other than Class Representative Rodolfo Gutierrez is waiving his or her rights under California Civil Code Section 1542. [Brouillette Decl., ¶ 10.]

### F. PAGA Penalties

Finally, the settlement provides for $30,000 to be allocated to civil penalties under PAGA, and Plaintiff respectfully requests the Court approve that amount as fair, reasonable and adequate, and consistent with PAGA's underlying purposes. As required by Labor Code § 2699(*l*)(2), Plaintiff gave notice to the Labor & Workforce Development Agency of the settlement and the final approval hearing via the LWDA's online portal. [Brouillette Decl., ¶ 11; Exh. 1.]

### IV. THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL

In class action cases, the district court must approve any settlement.

1  Fed.R.Civ.P. 23(e).  The Court already conducted an inquiry into the settlement's
2  fairness and adequacy in the preliminary approval motion and now the notice
3  process has been completed and Plaintiff respectfully requests the Court, with the
4  benefit of the class member reaction, revisit and confirm the settlement overall is
5  fair, reasonable and adequate and should be fully and finally approved.

6  The "universal standard" in evaluating a class action settlement under
7  Fed.R.Civ.P. 23(e) is whether the settlement is "fundamentally fair, adequate and
8  reasonable." Fed.R.Civ.P. 23(e)(2); Officers for Justice v. Civil Service Comm'n,
9  688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise
10 a private consensual agreement negotiated between the parties to a lawsuit must be
11 limited to the extent necessary to reach a reasoned judgment that the agreement is
12 not the product of fraud or overreaching by, or collusion between, the negotiating
13 parties, and that the settlement, taken as a whole, is fair, reasonable and adequate
14 to all concerned." Id.

15 As the Ninth Circuit recognizes, "the very essence of a settlement is
16 compromise." Id. at 624. "[I]t is the very uncertainty of outcome in litigation and
17 avoidance of wasteful and expensive litigation that induce consensual settlements.
18 The proposed settlement is not to be judged against a hypothetical or speculative
19 measure of what might have been achieved by the negotiators." Linney v. Cellular
20 Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998).  Even if a proposed
21 settlement amounts to a fraction of the potential recovery, this does not mean the
22 settlement is necessarily inadequate. Id.

23 A proposed settlement is presumed to be fair when (1) it is reached through
24 arm's-length negotiations, (2) the putative class is represented by experienced
25 counsel, and (3) the parties have conducted sufficient discovery. Wal-Mart Stores,
26 Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005).  Here, all of the factors
27 giving rise to a presumption of fairness exist. First, the proposed settlement was the
28 product of arm's-length, non-collusive negotiations, overseen by a well-respected,

independent mediator. [Brouillette Decl., ¶ 5.]  Second, the class is represented by experienced counsel. [Brouillette Decl., ¶¶ 20-31.] Third, the parties exchanged a significant amount of information, both formally and informally, such that Plaintiff and his counsel are able to make an informed recommendation about the settlement. [Brouillette Decl., ¶¶ 5, 12.]  Thus, the settlement is presumed to be fair.

In evaluating the fairness of a settlement, the district court may also consider the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement;  the extent of discovery completed and the stage of the proceedings;  the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Likewise, many of these same "Hanlon factors" may inform the Court's evaluation of the PAGA-only component of the settlement. Moniz v. Adecco USA, Inc., 72 Cal.App.5th 56 (2021). Lastly, the district court should satisfy itself that the settlement is not the product of collusion between the plaintiff and the defendant.  Class Plaintiffs v. Seattle, 955 F.2d. 1268, 1290 (9th Cir. 1992).  Here, except for the absence of a governmental participant, each relevant factor favors approving the settlement.

### A.    The Strength of Plaintiff's Case.

A settlement is not judged against what plaintiff might recover had he prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. Linney, 151 F.3d at 1242; White v. Experian Information Solutions, Inc., 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011) (rejecting contention settlement was not fair and reasonable even though it represented 99% discount off the maximum value of the claims); see also Wershba v. Apple Computers, Inc., 91 Cal.App.4th 224, 246, 250 (2001) ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed

settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation").

Plaintiff addressed the strengths and weaknesses of the class and PAGA claims and Defendant's defenses in detail in the motion for preliminary approval, and respectfully submits there has been no change in the law or facts of this case rendering the class claims any stronger than they were at preliminary approval. [Plaintiff's Motion for Preliminary Approval, at 11-22; Docket No. 57.] Although Plaintiff believes he could have prevailed, there were no guarantees as Defendant presented substantial evidence and legal defenses challenging the merits of Plaintiff's claims, as well as challenging class certification and the potential manageability of a trial on the PAGA claims. When the risks of prevailing at both certification and trial are factored into the equation, the settlement value is reasonable and supported. When the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability and prevail at trial on either a class or PAGA basis, the probability of appeal of a favorable judgment and its attendant delays, it is clear the total settlement amount of $500,000 is within the "ballpark" of reasonableness.

    **B.**    **The Risk, Expense, Complexity and Likely Duration of Further Litigation**

Further litigation of this matter would not necessarily serve the interests of the class members, and would require class members to offer individualized evidence regarding their damages; importantly, the costs associated with such efforts would be substantial. In re: GMC Pick-Up Truck Fuel Tank Prods. Litig., 55 F.3d 768, 784 (3d Cir. 1995) ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). By the same token, further litigation

would cause significant delay of any eventual payments to the class members, assuming they even prevail. Lastly, the complete absence of objections and the paltry number of opt outs suggests the Class itself believes the benefits of the instant settlement outweigh the prospects of continued litigation.

### C. The Risk of Maintaining Class Action Status Throughout the Trial

Plaintiff and his counsel strongly believe this lawsuit is maintainable as a class action. However, there are risks associated with the class certification issue. This is particularly true in this matter given the nature of Defendant's business and the fact that its employees work at a number of different facilities throughout California, hold different job positions, work under different management, etc. While Plaintiff contends there are common themes applicable to all Class Members based on Defendant's own policies, he also recognizes the very real possibility that the Court might agree with Defendant and find insurmountable individual issues are present.

Further, cases like Duran v. U.S. Bank, 59 Cal.4th 1 (2012) demonstrate the complexity of using statistical samples to litigate representative class claims, and demonstrate the very real risk that even using such techniques does not guarantee certification or safeguard against decertification regardless of class size. Thus, even Plaintiff's preferred method of evidentiary proof comes with the potential risk of losing certification in the process. Plaintiff acknowledges Defendant's arguments do present significant risk as to both certification and maintaining certification and consequently this factor suggests settlement is preferable to continued litigation.

### D. The Amount Offered in Settlement

Defendant agreed to settle the action for a Gross Settlement Amount of $500,000, which Plaintiff submits is reasonable in light of Defendant's procedural and merits defenses, of which there are many. As discussed above, these monies will then be proportionately distributed to Settlement Class Members according to

number of weeks worked during the class period, and will result in an average share of approximately $80, with a maximum award in excess of $144. [Burns Decl., ¶ 12.]

It is also significant that none of the settlement funds revert back to IPC, and provide immediate benefit to a class of workers without a lengthy claims process. White, 803 F.Supp.2d at 1086; Kakani v. Oracle Corp., 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007); c.f., Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 20 (3d ed. 2010), available at http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf (reversionary provisions and/or cumbersome claims process may indicate lack of fairness).

As to the PAGA component of the settlement, Defendant will pay substantial penalties of $30,000 and such penalties serve the "primary purpose of PAGA." Jordan v NCI Grp., Inc., 2018 U.S. Dist. LEXIS 25297, at *7-8 (C.D. Cal. Jan. 5, 2018). Further, the LWDA was given notice of the settlement, the preliminary approval hearing, and the final approval hearing, and offered no objection or comment to the proposed PAGA penalties.

Based on this, the size of the overall recovery well as the significant individual settlement awards supports a finding the proposed settlement is fair, adequate, and reasonable in all respects. Accordingly, this factor weighs in favor of approval as well. [Brouillette Decl., ¶¶ 13-15.]

### E. The Stage of the Proceedings and the Extent of Discovery Completed

Prior to reaching this settlement, Plaintiff's counsel conducted substantial formal and informal discovery and investigation into the claims alleged by Plaintiff, including, among other things reviewing and analyzing handbooks and other policy documents, deposing Defendant's persons most knowledgeable and other percipient witnesses, interviewing numerous class members, and reviewing and analyzing time and payroll data produced by Defendant with the aid of a

consulting expert. Plaintiff's counsel's evaluation of the case and potential damages are based on reliable data on class size (total current and former employees), pay period data, average hourly rate of pay, policy documents, and thousands of data points derived from pay and time records. In addition, Plaintiff's counsel has investigated the applicable law regarding the claims and defenses to the claims asserted in the litigation. [Brouillette Decl., ¶¶ 5, 12.] Thus, Plaintiff and his counsel were able to act intelligently and effectively in negotiating the proposed Settlement. [Brouillette Decl., ¶¶ 13-15.] Plaintiff's counsel has sufficient familiarity with the facts of the case to make an informed decision about the fairness of the settlement.

**F.  The Experience and Views of Counsel.**

Plaintiff's counsel has extensive experience in wage and hour class actions and is qualified to prosecute this action. Based on this combined experience, and after factoring in the risks discussed at length both above and at preliminary approval, Plaintiff's counsel are confident the current proposed settlement is fair, adequate, and reasonable. [Brouillette Decl., ¶¶ 20-31.]

**G.  The Reaction of the Class to the Settlement.**

The settlement was well-received by the class. No objections have been filed, and only one class members opted out, for a 99.7% participation rate. [Burns Decl., ¶¶ 7-8.]  As the Ninth Circuit and other federal courts recognize, class member reaction to the settlement is one of the most important factors to consider in determining if final approval should be granted. Mandujano v. Basic Vegetable Prods., Inc., 541 F.2d 832, 837 (9th Cir. 1976); see also In re: American Bank Note Holographics, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks omitted).

/ / / /

/ / / /

### H. No Collusion Between the Parties or their Counsel.

As discussed above, the settlement is the product of adversarial, non-collusive, and arm's-length bargaining between experienced counsel, facilitated by a well-respected mediator. There are no undisclosed side agreements between the parties or their counsel. [Brouillette Decl., ¶ 5.]

## VI. The Settlement Administrator's Fees

The settlement provides for a payment to Phoenix of no more than $27,500 for its services as the Settlement Administrator. As set forth in the Declaration of Yami Burns, Phoenix has performed and will continue to perform its required duties through final distribution of the settlement funds, and incurred $27,500 in fees and expenses. [Burns Decl., ¶ 14, Exh. B.] Accordingly, Plaintiff respectfully requests the Court approve payment of $27,500 to Phoenix from the Gross Settlement Amount. [Brouillette Decl., ¶ 16.]

## VII. The Proposed Class Representative Payment Is Reasonable

Courts award class representative payments to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, and also to compensate class representatives for their time, effort and inconvenience. Factors considered in determining whether to grant such an award may include the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Consistent with the Joint Stipulation, Plaintiff now requests an enhancement of $7,500. This modest requested award was well-earned based on the risks he faced in coming forward as a lead plaintiff and the assistance he provided to counsel throughout the litigation, including sitting for a full-day

deposition. [Brouillette Decl., ¶¶ 17-19; Declaration of Rodolfo Gutierrez, at ¶¶ 2-9.] Plaintiff submits the amount sought is well within the range of reasonableness for such awards in other wage and hour class actions. <u>Nelson v. Avon 5 Prod., Inc.</u> (N.D. Cal. Feb. 24, 2017) 2017 WL 733145, at *7 (approving incentive award of $10,000 where plaintiff "appeared for an all-day deposition, searched for documentation relating to the class action, reviewed documents and settlement papers, attended the mediation and subsequent negotiations, and aided Class Counsel with negotiation efforts"); <u>Torchia v. W.W. Grainger, Inc.</u> (E.D. Cal. 2014) 304 F.R.D. 256 (approving $7,500 incentive award).

## VIII. **CONCLUSION**

For all the foregoing reasons, Plaintiff Rodolfo Gutierrez respectfully requests that the Court grant this motion and grant final approval of the proposed class action settlement, approve the requested class representative enhancement payment, approve the payment of PAGA penalties to the State, approve payment of the Settlement Administrator's fees and expenses, approve the award of attorney's fees and costs requested in Plaintiff's separate Motion for Award of Attorney's Fees and Costs, and enter judgment in this action.

Dated: May 20, 2024                    CROSNER LEGAL, P.C.

_____
ZACHARY M. CROSNER
JAMIE K. SERB
BRANDON K. BROUILLETTE
Attorneys for Plaintiff RODOLFO GUTIERREZ