Zachary M. Crosner (SBN 272295)
    E-Mail: zach@crosnerlegal.com
Jamie Serb (SBN 289601)
    E-Mail: jamie@crosnerlegal.com
Brandon K. Brouillette (SBN 273156)
    E-Mail: bbrouillette@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, CA 90210
Telephone: (866) 276-7637
Facsimile: (310) 510-6429

Attorneys for Plaintiff
RODOLFO GUTIERREZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO GUTIERREZ, as an individual on behalf of himself and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY, a New York corporation,<br><br>Defendants. | Case No.: 2:22-cv-08460-JFW-RAO<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed concurrently with Declaration of Brandon K. Brouilletter]**<br><br>Date: June 24, 2024<br>Time: 1:30 p.m.<br>Place: Ctrm 7A<br><br>Hon. John F. Walter |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 24, 2024, at 1:30 p.m., in Courtroom 7A of the above-captioned Court, located at 350 West First St., Los Angeles, California, the Hon. John F. Walter presiding, plaintiff Rodolfo Gutierrez, on behalf of himself and the conditionally certified settlement class, will and hereby does move the Court for an award of attorney's fees and costs as provided in the proposed class and representative action settlement.  The request for "benchmark" attorney's fees equal to 25% of the gross settlement amount, or $125,000, is fair and reasonable under the circumstances of the case.   Plaintiff also requests reimbursement of actual litigation costs in the amount of $19,669.68.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Brandon Brouillette, the entire Court file in this matter, and on such further evidence and argument as may be presented at the hearing.

Dated: May 20, 2024                    CROSNER LEGAL, P.C.

ZACHARY M. CROSNER
JAMIE K. SERB
BRANDON K. BROUILLETTE
Attorneys for Plaintiff RODOLFO
GUTIERREZ

# **TABLE OF CONTENTS**

I.      INTRODUCTION.......................................................................................... 1

II.     STATEMENT OF FACTS............................................................................ 2

III.    LEGAL ARGUMENT ................................................................................. 3

     A.      The Attorney's Fees Requested Are Fair and Reasonable and
         Should Be Awarded as a Percentage of the Common Fund ......... 3

          **1.**     **Result Achieved**.................................................... 6

          **2.**     **The Risk of Litigation**............................................ 6

          **3.**     **Timely Resolution of the Case** ............................... 7

          **4.**     **Class Counsel's Experience in Wage and Hour Class** ....... 8
          **Action Litigation** ................................................................ 8

          **5.**     **Contingent Nature of the Fee** ............................... 8

     B.      A Lodestar Cross-Check Also Supports Class Counsel's Fee
         Request ................................................................................. 9

IV.     REIMBURSEMENT OF COSTS ............................................................. 11

VII.    CONCLUSION ........................................................................................ 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>In re Activision Sec. Litig.</u>,
  723 F.Supp. 1373 (N.D. Cal. 1989)......................................................5

<u>Alyeska Pipeline Service Co. v. Wilderness Society</u>,
  421 U.S. 240 257-58 (1975) .................................................................3

<u>Boeing Co. v. Van Gemert</u>,
  444 U.S. 473,478 (1980) ......................................................................3

<u>In re: Businessland Sec. Litig.</u>,
  1991 U.S. Dist. Lexis 8962 (N.D. Cal. June 18, 1991)......................11

<u>Camden I Condominium Ass'n, Inc. v. Dunkle</u>,
  946 F.2d 768 (11th Cir. 1991) .............................................................4

<u>*In re Chiron Corp. Secs. Litig.*</u>,
  2007 WL 4249902 (N.D. Cal. Nov. 30, 2007)......................................9

<u>Florida v. Dunne</u>,
  915 F.2d 542 (9th Cir. 1990) ...............................................................4

<u>Glass v. UBS Financial Servs., Inc.</u>,
  2007 U.S. Dist. Lexis 8476 (N.D. Cal. Jan. 26, 2007), <u>aff'd</u> 331
  Fed.Appx. 452 (9th Cir. 2009) .............................................................7

<u>In re: Heritage Bond Litig.</u>,
  2005 U.S. Dist. Lexis 13627 (C.D. Cal. June 10, 2005) ......................6

<u>Knight v. Red Door Salons, Inc.</u>,
  2009 WL 248367 (N.D. Cal. Feb 2, 2009)...........................................5

<u>McKittrick v. Gardner</u>
  (4th Cir. 1967) 378 F.2d 872 ...............................................................9

<u>Mills v. Auto-Lite Co.</u>,
  396 U.S. 375 (1970) .............................................................................3

<u>Morris v. Lifescan, Inc.</u>,
  54 Fed.Appx. 663 (9th Cir. 2003) ........................................................4

<u>In re Oracle Sec. Litig.</u>,
  131 F.R.D. 688 (N.D. Cal. 1990) ................................................................. 5

<u>In re Pacific Enters. Sec. Litig.</u>,
  47 F.3d 373 (9th Cir. 1995) ......................................................................... 4

<u>Paul, Johnson, Alston & Hunt v. Graulty</u>,
  886 F.2d 268 (9th Cir. 1989) .................................................................. 3, 5

<u>Powers v. Eichen</u>,
  229 F.3d 1249 (9th Cir. 2000) ..................................................................... 8

<u>Romero v. Producers Dairy Foods, Inc.</u>,
  2007 WL 3492841 (E.D. Cal. 2007) ........................................................... 5

<u>Shaw v. Toshiba America Information Systems, Inc.</u>,
  91 F.Supp.2d 942 (E.D. Tex. 2000) ............................................................ 5

<u>Six (6) Mexican Workers v. Arizona Citrus Growers</u>,
  904 F.2d 1301 (9th Cir. 1990) ................................................................. 4, 5

<u>Sprague v. Ticonic Nat'l Bank</u>,
  307 U.S. 161 (1939) ..................................................................................... 4

<u>Van Vranken v. Atlantic Richfield Co.</u>,
  901 F.Supp. 294 (N.D. Cal. 1995) ......................................................... 5, 11

<u>Vasquez v. Coast Valley Roofing, Inc.</u>,
  266 F.R.D. 482 (E.D. Cal. 2010) ................................................................ 5

<u>Vizcaino v. Microsoft Corp.</u>,
  290 F.3d 1043 (9th Cir. 2002) ................................................................. 6, 9

<u>In re Warner Communications Sec. Litig.</u>,
  618 F.Supp. 735 (S.D.N.Y. 1985) .............................................................. 6

**Other Authorities**

Newberg on Class Actions, § 14.6 (4th ed. 2007)......................................................5

Rule 30(b)(6) ....................................................................................................2, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After some two years of investigation, litigation, and settlement negotiation and administration, all without any compensation for services rendered or costs expended, Class Counsel secured an excellent settlement with defendant International Paper Company ("IPC") that confers significant compensation to 3,489 individuals who worked for IPC as non-exempt employees in California. The common fund settlement of $500,000 provides for the payment and administration of claims of the Class Members, payment of attorney's fees and costs, payment of employer-side payroll taxes, payment of civil penalties to the State, Plaintiff's service award, and costs of settlement administration.

The Court granted preliminary approval to the class component of the settlement on February 9, 2024. The Class Notice was mailed to the Class Members on March 14, 2024, and advised the Class that Class Counsel would request attorney's fees not to exceed one-quarter of the Gross Settlement Amount, or $125,000, along with reimbursement of no more than $20,000 for actual costs incurred litigating this matter. No class member objected to the proposed award of fees and costs and the California Labor & Workforce Development Agency, having been duly notified of the settlement, likewise offered no comment or objection.

Plaintiff now respectfully requests the Court award Class Counsel's fees in the amount of $125,000 – equal to the Ninth Circuit "benchmark" of 25% of the common fund – and costs in the amount of $19,669.68, as described in the Declaration of Brandon K. Brouillette ("Brouillette Decl."), filed herewith.

The requested fee is well within the range of reasonableness, especially considering the complex and risky nature of this litigation, the

contingent risk assumed, and the over two-year delay in payment. A lodestar cross-check of the requested fee further confirms its reasonableness, as the base lodestar actually is larger than the fee requested on a percentage of the recovery basis. Accordingly, consistent with long standing Ninth Circuit precedent, Plaintiff respectfully requests the Court grant the motion and award the full amount of fees and costs requested.

## II. **STATEMENT OF FACTS**

Plaintiff outlined the details of the procedural and factual background of this matter in her Motion for Preliminary Approval of Class Action Settlement (filed January 4, 2024; Docket No. 57, at 2-5). [Declaration of Brandon Brouillette ("Brouillette Decl."), ¶ 2.]

Based on these allegations, Plaintiff filed a class action complaint in May 2018 in the Los Angeles County Superior Court, which Defendant then removed the case to this Court. [Docket No. 1.] Defendant IPC has at all times denied Plaintiff's allegations and contended in properly calculated and paid all wages due to the Settlement Class, provided all required meal and rest breaks, and otherwise complied with all applicable state and federal wage and hour laws. Additionally, Defendant argues the case is not suitable for class treatment for multiple reasons, including the predominance of individualized issues as to potential liability. [Brouillette Decl., ¶¶ 3-4.]

After extensive formal and informal discovery, including multiple depositions of Plaintiff, IPC's Rule 30(b)(6) designees, and other percipient witnesses, as well as law and motion practice, the parties participated in an adversarial full-day mediation in April 2023. After a full day of negotiations and discussions regarding the claims and defenses in this action, as well as the risks involved in further litigation, the Parties reached agreement on the Settlement's material terms, which are encompassed within the Joint Stipulation of Class Settlement and Release (the "Joint Stipulation") previously submitted to the Court

(Docket No. 57-1). [Brouillette Decl., ¶ 5.]

The Court issued its Order (Docket No. 62) preliminarily approved the settlement on January 29, 2024.  Notices were mailed to the Class Members on March 14, 2024, with a 60-day window for class members to opt out or object to the proposed settlement. No objections to the settlement or proposed award of fees and costs were received. [Declaration of Yami Burns ("Burns Decl."), filed in support of Plaintiff's Motion for Final Approval, at ¶¶ 5, 7-8.]

## III.    LEGAL ARGUMENT

### A.    The Attorney's Fees Requested Are Fair and Reasonable and Should Be Awarded as a Percentage of the Common Fund

The U.S. Supreme Court has consistently recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 473,478 (1980); Mills v. Auto-Lite Co., 396 U.S. 375, 392-93 (1970).  The common fund doctrine is a well-recognized exception to the American Rule that a litigant must bear its own attorney's fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 257-58 (1975).  The Ninth Circuit holds the common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those who are benefitting.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989).  These criteria are "easily met" when "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum [settlement] recovered on his behalf." Id. at 271, citing Van Gemert, 444 U.S. at 479.

Under the three factors set forth in Paul, Johnson, the common fund doctrine applies in this matter.  First, the class of beneficiaries is identifiable.  Medical Solutions has identified each of the settlement class members by reviewing its employment records.  Second, the benefits are easily traceable, as they consist

entirely of monetary payments directly to the affected employees.  Further, each class member has an "undisputed and mathematically ascertainable claim" to a share of the settlement based on the number of weeks during the class period he or she worked for Medical Solutions in California in a settled position in California. Third, the fee can be shifted with exactitude since Class Counsel claims a specific, lump-sum percentage of the Gross Settlement Amount.

Under the common fund doctrine, courts typically award attorney's fees based on a percentage of the total settlement.  As the Ninth Circuit wrote in Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990), "[a]lthough statutory awards of attorneys fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."  Every U.S. Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery.   See Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 773 (11th Cir. 1991) citing Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984) (percentage of recovery method is appropriate way to award attorney's fees in common fund cases); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161 (1939).

In the Ninth Circuit, district courts have discretion to use either the percentage of the recovery method or the lodestar method to calculate attorney's fees. Williams, 129 F.3d at 1027. Nevertheless, the Ninth Circuit also has recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases . . . ." Florida v. Dunne, 915 F.2d 542, 545 (9th Cir. 1990); In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming fee award equal to 1/3 of overall recovery); Morris v. Lifescan, Inc., 54 Fed.Appx. 663 (9th Cir. 2003) (affirming fee award of 1/3 of recovery).

Further, many district courts in California find the percentage of the recovery method preferable to a traditional lodestar calculation because: (1) it aligns the

interests of class counsel and the class, (2) it encourages efficient resolution of litigation by incentivizing early yet reasonable settlement, and (3) it reduces the demand on scarce judicial resources. <u>In re Oracle Sec. Litig.</u>, 131 F.R.D. 688, 689 (N.D. Cal. 1990) (noting lodestar method has been "thoroughly discredited by experience"); <u>In re Activision Sec. Litig.</u>, 723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989) (same).

The Ninth Circuit has long considered a fee of 25% as the "benchmark" in common fund cases. <u>Six (6) Mexican Workers</u>, 904 F.2d at 1311; <u>Williams</u>, 129 F.3d at 1027; <u>Paul, Johnson</u>, 886 F.2d at 272. In fact, the Ninth Circuit benchmark of 25% falls in the low to mid-range of fee awards made in class actions. 4 Conte & Newberg, <u>Newberg on Class Actions</u>, § 14.6, at p. 550 (4th ed. 2007); <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F.Supp. 294, 297 (N.D. Cal. 1995) (noting fee awards of 30-50% are common in "smaller" settlements involving less than $10 million); <u>Shaw v. Toshiba America Information Systems, Inc.</u>, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").

In wage and hour cases with resolutions very similar to this one, district courts in California have often awarded attorneys' fees even higher than the Ninth Circuit benchmark, with awards at or above 30% of the value of the common fund being commonplace. *Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482 (E.D. Cal. 2010) (fee award of 33.3% in a claims-made $300,000 settlement); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. 2007) (fee award of 33% from a $240,000 settlement); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb 2, 2009) (fee award of 30% from a $500,000 settlement); *Alvarado v. Rex Nederend*, WL 1883188 (E.D. Cal. May 17, 2011) (33.33% fee award from a $496,569 settlement). Thus, Class Counsel's request for 25% of the common fund is the benchmark and lower than similar awards approved by other

district court decisions in California.

Additionally, under Ninth Circuit precedent, a district court has discretion to adjust the 25% benchmark upward or downward, but such an adjustment is warranted only in "unusual circumstances."  Factors a district court may consider here include: (1) the result achieved, (2) the risk of the litigation, (3) the skill required and the quality of the work, (4) the contingent nature of the fee, and (5) awards made in similar cases.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).  In this case, application of these factors suggests there is no reason to depart from the benchmark 25% fee.

### 1.    Result Achieved

The most important factor to consider is the degree of success obtained by class counsel.  In re: Heritage Bond Litig., 2005 U.S. Dist. Lexis 13627, at *27 (C.D. Cal. June 10, 2005) citing Hensley v. Eckerhart 461 U.S. 424, 436 (1982) ("most critical factor is the degree of success obtained").  "The quality of work performed in a case that settles before trial is perhaps best measured by the benefit obtained." In re Warner Communications Sec. Litig., 618 F.Supp. 735, 748 (S.D.N.Y. 1985).  Indeed, the common fund itself represents the measure of success and represents the benchmark from which a reasonable fee should be awarded.  In this case, the settlement represents a significant percentage of Medical Solution's potential liability to the Class, is favorable to the class members, and awards them a substantial portion of the overall recovery. Class members are receiving payments averaging around $80 each, which Plaintiff contends is favorable considering IPC's procedural and merits defenses, of which there are many. [Burns Decl., ¶ 12; Brouillette Decl., ¶ 6.]  This factor thus supports the requested fee award.

### 2.    The Risk of Litigation

Although Plaintiff and his counsel believe strongly in the merits of their case, there still is a significant risk they might not prevail at trial, even assuming they could secure and maintain class certification. As discussed at length in Plaintiff's

1  motion for preliminary approval, this case posed any number of highly disputed
2  legal and factual questions, a loss on any one of which would have severely
3  impacted if not scuttled the case entirely.  [Motion for Preliminary Approval, at 11-
4  22; Docket No. 57.]

5      At the time of filing the initial Complaint, Class Counsel recognized they
6  would have to expend a substantial amount of time and advance significant
7  costs to prosecute a statewide class action with no guarantee of compensation
8  or reimbursement, in the hope of prevailing against a sophisticated company
9  represented by first-rate attorneys. Despite their belief in the validity of
10  Plaintiff's claims, they also knew they faced substantial risks of class
11  certification and the ability to prove class-wide and individual damages, as
12  discussed plaintiff's motions for preliminary and final approval.

13      In light of the highly uncertain nature of this suit, Class Counsel also bore
14  the risk that Defendant would dig in and attempt to bury a small firm in work.
15  Given the small size of Class Counsel's firm, not receiving any compensation
16  for several years while simultaneously advancing litigation costs posed
17  considerable risk and difficulty. [Brouillette Decl., ¶¶ 22-24.]

18              **3.    Timely Resolution of the Case**

19      The expeditious settlement achieved by class counsel, without the necessity
20  of extensive motion practice or trial, also supports a "benchmark" fee award.  This
21  timely resolution conserved both judicial resources and the resources of the parties.
22  Had counsel not been able to convince IPC to attend an early mediation, or if the
23  case had not settled at mediation, the ensuing litigation surely would have
24  consumed substantially more time and would have cost all parties significantly, all
25  without any assurance of achieving a different or better result for the class.  As
26  other California district courts recognize, prompt action by class counsel in
27  securing an early but still reasonable settlement should be rewarded.  Glass v. UBS
28  Financial Servs., Inc., 2007 U.S. Dist. Lexis 8476, at *45-50 (N.D. Cal. Jan. 26,

2007), aff'd 331 Fed.Appx. 452 (9th Cir. 2009).

### 4.    Class Counsel's Experience in Wage and Hour Class Action Litigation

Class counsel has substantial experience in wage and hour class and PAGA representative actions, having been approved as lead or co-class counsel in multiple cases in California state and federal courts over the past several years. [Brouillette Decl., ¶¶ 11-16.]  The degree of competence applied to the case by counsel is evidenced by the fact that, as a small boutique firm, they nonetheless timely resolved this matter on favorable terms despite facing off against a large corporate defendant represented by "big firm" counsel with substantial experience defending this kind of case.

### 5.    Contingent Nature of the Fee

There is a substantial difference between the risk assumed by attorneys being paid by the hour and attorneys working on a contingent fee basis. The attorney being paid by the hour can go to the bank with his fee. Powers v. Eichen 229 F.3d 1249, 1256 (9th Cir. 2000). The attorney working on a contingent basis can only log hours while working without pay towards a result that will hopefully entitle him to a market fee considering the risk and other factors of the undertaking. Id. at 1257. Otherwise, the contingent fee attorney receives nothing. In this case, Class Counsel subjected themselves to this risk in this all or nothing contingent fee case wherein the necessity and financial burden of private enforcement makes the requested award appropriate.

As in this case, counsel retained on a contingency fee basis, whether in private matters or in class action litigation, is entitled to a premium beyond their standard, hourly, non-contingent fee schedule to compensate for both the contingent risk assumed and the delay in payment. The simple fact is that despite the most vigorous and competent of efforts, success is

1  never guaranteed. <u>McKittrick v. Gardner</u> (4th Cir. 1967) 378 F.2d 872, 875.
2  If counsel is not adequately compensated for the risks inherent in difficult
3  class actions, competent attorneys will be discouraged from prosecuting
4  similar cases.

5      Here, the contingent fee practice of Plaintiff's counsel simply does not
6  accommodate the investment of unnecessary time in a case, and the adverse
7  resolution of any one of several difficult issues present in this matter could have
8  doomed the entire effort.  As discussed, the attorney's fees in this case were not
9  only contingent but fairly risky, and there was always a real chance Plaintiff's
10 counsel would receive nothing for any number of reasons.  [Brouillette Decl.,
11 ¶¶ 23-24.]

12     Class Counsel also was required to advance all costs in this litigation.
13 [Brouillette Decl., ¶ 25.] Especially in this type of litigation, where corporate
14 defendants and their big firm attorneys are well funded, this can prove to be very
15 expensive and risky.

16 **B.    <u>A Lodestar Cross-Check Also Supports Class Counsel's Fee
17 Request</u>**

18     To ensure the fairness of an attorney's fee award, courts frequently
19 conduct a lodestar cross check of counsel's fees. a check on the reasonableness
20 of the contemplated fee award, Courts may compare the fee amount counsel seeks
21 as a percentage with what their hourly bills would amount to under the lodestar
22 analysis.  *See, e.g.,* <u>Vizcaino</u>, 290 F.3d at 1050-51 ("Calculation of the lodestar,
23 which measures the lawyers' investment of time in the litigation, provides a check
24 on the reasonableness of the percentage award.")  In similar cases, courts have
25 routinely awarded multipliers ranging between 1 and 4.  <u>In re Chiron Corp. Secs.</u>
26 <u>Litig.</u>, 2007 WL 4249902, at *7-8 (N.D. Cal. Nov. 30, 2007) (surveying fee awards
27 in class action suits).
28     Here, the Class Counsel has spent 281.95 hours litigating this matter.

[Brouillette Decl., ¶¶ 7-8.]  The hourly rates for the primary attorneys are $800 per hour for Zachary Crosner, $750 per hour for Brandon Brouillete and Chad Saunders, Kiara Bramasco $650 per hour, and Brandon Hamilton $600 per hour. [Brouillette Decl., ¶¶ 11-19.]  These rates are reasonable and similar rates for these attorneys have been approved by numerous other state and federal courts. [Brouillette Decl., ¶¶ 20-21.]  Here, through securing preliminary approval and filing this motion and the final approval motion, Class Counsel incurred a reasonable lodestar of $208,382.50. [Brouillette Decl., ¶ 8.]

As detailed in the Brouillette Declaration and Exhibit 1 thereto, Class Counsel's efforts included: (1) extensive pre-lawsuit investigation of the claims of Plaintiff and the putative class, including legal research, research into similar claims and claims against other employers in the same industry, and attempts to locate and contact other IPC employees; (2) drafting a PAGA notice letter; (3) drafting the initial complaint and related documents; (4) case management, including communications with defense counsel, meeting and conferring/preparing case management statements, etc.; (5) drafting and filing the first amended complaint; (6) extensive discussions with counsel regarding settlement/mediation and informal discovery needed for meaningful settlement discussions; (7) engaging in substantial written discovery, follow up meet and confer discussions with defense counsel, and informal briefing and discussions with the Court; (8) law and motion work regarding defendant's motion to dismiss; (9) defending Plaintiff's deposition; (10) deposing IPC's two Rule 30(b)(6) designees and other IPC managers; (11) propounding informal discovery "requests" and reviewing documents and other information produced; (12) drafting a mediation brief and accompanying damages model after review and analysis of defendant's informal discovery production and related communications with plaintiff's expert consultants; (13) attending an all-day mediation; (14) negotiating and drafting the joint stipulation of settlement and related documents; (15) drafting the motion for

preliminary approval; (16) administration of the settlement, including communications with the Settlement Administrator and settlement class members; (17) drafting the final approval motion and attorney's fee motion; and (18) extensive communications with the Plaintiff regarding case status, case investigation and document review, mediation, and settlement terms. [Brouillette Decl., ¶ 7; Exh. 1.] Additionally, Class Counsel will continue to administer the settlement through the approval and distribution process until final closure of the Court's file.  [Brouillette Decl., ¶ 10.]

The lodestar is based on an eminently reasonable number of hours worked to litigate this matter to a successful conclusion, and the requested attorney hourly rates are reasonable and comport with hourly rates charged by other attorneys with similar experience in this practice area in California.  [Brouillette Decl., ¶¶ 7-21.] On a lodestar basis, the fee request of $125,000 is actually smaller than the base lodestar, and accordingly there is no request to apply a lodestar modifier. Indeed, the lodestar crosscheck confirms the reasonableness of the fee request since the requested fees are lower than their actual market value when evaluated via traditional hourly billing.  [Brouillette Decl., ¶¶ 22-24.]

## IV.    REIMBURSEMENT OF COSTS

In class action litigation, the prevailing view is that litigation expenses are awarded in addition to the award of attorney's fees.  Van Vranken, 901 F.Supp. at 299 (awarding litigation expenses in addition to attorney's fees); In re: Businessland Sec. Litig., 1991 U.S. Dist. Lexis 8962, at *6 (N.D. Cal. June 18, 1991) (overruling objection that litigation expenses should be included in the requested fee award).  Class Counsel request that, in addition to reasonable attorney's fees, the Court grant its application for reimbursement of $19,669.68 in expenses incurred in connection with this litigation. As set forth in the chart below, these expenses include the amounts paid for, inter alia, service of process, deposition costs, mediation fees, and filing fees, all

of which are costs normally billed to and paid by the client.

| Expense Category | Amount |
|---|---|
| Mediation Fees | $3,825.00 |
| Court Filing Fees/ Service of Process/Attorney Service | $4,213.11 |
| Deposition Costs | $11,289.67 |
| PACER Costs | $35.00 |
| PAGA filing fee | $75.00 |
| Postage/Overnight/Fax | $231.90 |
| Photocopying | (waived) |
| Legal Research Charges | (waived) |
| **Total Costs and Expenses** | **$19,669.68** |

These costs were reasonably incurred in the prosecution of this matter. Further, Class Counsel is waiving certain other costs frequently charged to paying clients, such as photocopying/facsimile charges, postage, and legal research charges. [Brouillette Decl., ¶ 25.] All of these costs are reasonable and were necessary in the prosecution of this case, and Plaintiff requests the Court approve reimbursement in full.

## VII.  **CONCLUSION**

For the reasons listed above, Plaintiff requests the Court grant this motion and award Class Counsel $125,000.00 in attorneys' fees and $19,669.68 in cost reimbursement as part of the final approval of the class action settlement and judgment.

Dated: May 20, 2024                CROSNER LEGAL, P.C.

ZACHARY M. CROSNER
JAMIE K. SERB
BRANDON K. BROUILLETTE
Attorneys for Plaintiff RODOLFO
GUTIERREZ